UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 21-MJ-02322-LOUIS

UNITED STATES OF AMERICA

vs.

JOHNNY WATSON,

      Defendant.
_____/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?  ___ Yes  _X_ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?  ___ Yes  _X_ No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?  ___ Yes  _X_ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: _____
Kurt K. Lunkenheimer
ASSISTANT UNITED STATES ATTORNEY
Court ID No. A5501535
99 N.E. 4th Street
Miami, Florida 33132-2111
TEL (305) 961-9008
FAX (305) 536-7213
Kurt.Lunkenheimer@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| Johnny Watson, | ) Case No. 21-MJ-02322-LOUIS |
| | ) |
| | ) |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __February 10 to 12, 2021__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1349 | Conspiracy to commit mail fraud |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
Complainant's signature

Special Agent Alan G. Vega, HSI
Printed name and title

Attested to in accordance with the requirements of
Federal Rule of Criminal Procedure 4.1 by __Face Time__

Date: __February 19, 2021__

_____
Judge's signature

City and state: __Miami, FL__    Hon. Lauren F. Louis, US Magistrate Judge
Printed name and title

## AFFIDAVIT

I, Alan G. Vega, being duly sworn, hereby state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), performing the duties provided by law and regulation, and empowered to conduct investigations of offenses against the United States. I am currently assigned to the HSI Miami Illicit Proceeds and Foreign Corruption Group. I have been employed by HSI for the last 17 years. I am currently responsible for conducting and assisting in investigations relating to money laundering, mail and wire fraud, and other federal crimes. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Titles 8, 18, 19, and 21 of the United States Code.

2. As part of my duties as a Special Agent, I have been involved in and learned of elder fraud investigations, including the techniques used by scammers to financially defraud elderly victims, called "Elder Fraud." Elder fraud is the victimization of American seniors through a form of financial fraud or confidence scheme. Based upon this experience, I have become well versed in the methodology utilized to gain the victim's trust along with how the victim's funds move through the United States mail system.

3. The information set forth in this affidavit is provided solely for the purpose of establishing probable cause for the arrest of Johnny Watson ("WATSON") for willfully and knowingly conspiring with others to commit mail fraud, in violation of Title 18, United States Code, Section 1349. This affidavit includes facts known to me, as well as those told to me by other law enforcement officers. Because this Affidavit is submitted for the limited purpose of establishing

probable cause, it does not include all of the details of the investigation of which I am aware.

## PROBABLE CAUSE

4.     Your Affiant has learned that the victims of Elder Fraud involving Miami fraudsters are usually convinced via a telephone conversation to ship packages containing money to fictitious names (unbeknownst to them) to various houses all around the Miami area. The packages are continuously tracked by the mail fraud conspirators through the various mailing applications and a a co-consirator is commonly present at the delivery address to take custody of the package. It is common for the package to be transported to multiple locations before it reaches its final destination.

5.     On February 12, 2021, an investigator with a mail shipping company informed HSI Special Agents that he had identified a package at the mail shipping company sorting facility located on NW 64th Ave., Miami FL 33122, that fit the characteristics of a package associated with Elder Fraud. The packed was addressed to "Bernard Deangelis" at a residence located at 5305 Red Road, Coral Gables, Florida 33146, the "Delivery Address." The package was sent by an individual, with initials "J.A.," from Bethesda, Maryland. A law enforcement record search revealed there was no "Bernard Deangelis" associated with the Delivery Address, and it appears that the name is fictitious.

6.     The package was scheduled for overnight, early morning delivery, had not been insured, had a declared value of $1.00 in U.S. currency, and Delivery Address was a residential address. Delivery of the package which had been shipped on February 10, 2021, had been delayed due to weather. The package was subsequently opened by the mail shipping company and was found to contain $12,000 in U.S. currency concealed within two bank envelopes and surrounded by brown paper and plastic. A law enforcement record search revealed that "J.A.," from Bethesda, Maryland, is a 69-year-old female.

7.     Based on the training and experience of other law enforcement officers, a tracking warrant for the package, along with the permission to insert a beacon into the package, were obtained

from a federal magistrate judge.

8. After the tracking warrant was obtained, a tracker and beacon were placed inside the package, and the package was delivered by the mail shipping company to the Delivery Address.

9. Prior to the delivery of the package to the Delivery Address, law enforcement observed the Delivery Address. The Delivery Address appeared to be empty and had a "for sale" sign outside. In addition, a vehicle with an occupant was observed parked at the Delivery Address. The vehicle was a grey/silver Chrysler minivan. One occupant was observed by law enforcement to be inside the vehicle at that time. Prior to the delivery of the package to the Delivery Address, no individual was observed to have exited or entered the vehicle near the Delivery Address.

10. The package with the tracking device was delivered to the Delivery Address by the mail shipping company at approximately 1:45 pm. After the delivery, law enforcement observed, co-conspirator 1, the individual previously observed by law enforcement, exit the vehicle that was in the vicinity of the Delivery Address, pick up the package, and place it inside the vehicle from which he had exited. The vehicle then left the vicinity of the Delivery Address.

11. Sometime after the vehicle left the Delivery Address, law enforcement observed that there was a second individual in the vehicle, later identified as WATSON, in the front passenger seat.

12. While law enforcement followed the vehicle containing the package and driven by co-conspirator 1, with WATSON in the front passenger seat, it became apparent to law enforcement that co-conspirator 1 had become aware that his vehicle was being followed by law enforcement due to the fact that he began to drive erratically, making multiple U-turns and abrupt turns at intersections.

13. Eventually, law enforcement-initiated actions in order to have the vehicle stop. After an encounter between law enforcement and the vehicle, a firearm was later located inside the vehicle.

3

WATSON was detained after being removed from the front passenger seat of the vehicle. The package was later recovered from the second row of the vehicle, right rear seat.

14. Your Affiant contacted an individual who stated that he was the husband of J.A. The individual had your Affiant on speakerphone, and I believe that J.A. was present based on conversations that I overheard. During the call, the husband of J.A. acknowledged that he and his wife had been defrauded and sent two packages containing money: one to Miami and one to New Jersey. The husband stated that two separate people had called them, one claiming to be an attorney and another impersonating their child. One of the two callers, or both, asked them to send the money to Miami and New Jersey. The husband of J.A. ended the conversation as he was concerned that I was also part of the scheme to defraud him and his wife.

15. Law enforcement learned that on February 10, 2021, a police report was filed with the Coral Gables, Florida Police Department by a driver from a second parcel shipping company. In the report, the driver described the suspicious activity of two black males who had approached him on two separate occasions within a few hours apart, asking about the delivery of a package on February 10, 2021. On February 17, 2021, Special Agents interviewed the driver of a second parcel shipping company, who stated that on the morning of February 10, 2021, he delivered a package to a residence located on SW 23 Street, Miami, Florida, addressed to "Irene Barnes". The driver stated that the homeowner at the listed residence told him that no one by the name listed on the package resided at his residence. The driver stated that he later returned that package to the parcel shipping company hub. The driver said that, as he left the listed residence, he was flagged down by two black males in a newer model silver/gray Chrysler Minivan, and that the person driving the minivan asked him if he had delivered the package. As the shipping company driver began to inform the driver of the minivan of his attempted delivery of the package, the driver of the minivan sped off toward the listed address.

4

16. Later that same day, the second shipping company driver said that after delivering another package at a different location, his delivery truck was cut-off by the same Chrysler minivan that he had encountered in the morning. The shipping company driver stated that the passenger stepped out of the minivan and again asked him for the package from earlier in the day, claiming that it was for his wife. The shipping company driver told that passenger that he had returned the package to the parcel shipping company hub. The shipping company driver stated that during the entire exchange with the passenger, the passenger was on his phone and was relaying what was said to an unknown person over the telephone. The shipping company driver said that as he drove off, he observed the Chrysler minivan following him, which prompted him to call the police and file the report.

17. The Special Agents showed the second shipping company driver a photographic lineup. The shipping company driver pointed to the photograph of co-conspirator 1, as the person who was driving the Chrysler minivan. However, the driver said he was "not sure" co-conspirator 1 was the driver of the minivan. The second shipping company driver was then shown another photo lineup, and he identified WATSON as the passenger of the minivan. However, the driver was "not 100% sure" that WATSON was the passenger.

18. Law enforcement contacted the victim that sent the package that contained $8,000 in US currency and was attempted to be delivered on February 10th. The victim, "C.E.," explained that she was contacted by an unknown number, with a Canadian area code. A male on the phone identified himself as Joseph Sneider and advised C.E. that he was representing her grandson. Sneider informed C.E. that her grandson had been in an automobile accident and needed money for representation. C.E. was instructed to overnight ship $8,000 in cash to a residence located on SW 23rd St. Miami, Florida and address it to Irene Barnes. C.E. placed $8,000 in U.S. currency in a package, hidden in magazines, and mailed it to the address that Sneider had provided her. C.E. stated

that she learned she had been defrauded when she was contacted by Coral Gables Police Department and questioned about the package.

19. A law enforcement records search revealed that a telephone number belonging to co-conspirator 1 was 305-XXX-3509.

20. Pursuant to a search warrant, a forensic examination was conducted on WATSON's cell phone IMEI# 355198110594325. The review revealed multiple wireless network logins on February 10, 2021, from IMEI# 355198110594325 which is WATSON's phone, within ten meters of WATSON's listed address on NW 22nd Ave, Miami, Florida, between the hours of approximately 2:29 am though 6:46 am on February 10, 2021. A review of the call log from IMEI# 355198110594325, WATSON's phone, revealed an incoming call at 6:16 am and again at 6:34 am from 305-XXX-3509, which belongs to co-conspirator 1. Shortly after the 6:34 am call was received, there are no additional wireless network logins from within ten meters of the residence NW 22nd Ave, Miami, Florida on WATSON's phone.

21. On February 10, 2021, WATSON, using his phone, sent an outgoing text message at 8:40 am to 786-XXX-5249, under the name "tinka", saying "wgat's [sic] the damn address".

22. February 12, 2021, there are multiple wireless network logins from IMEI# 355198110594325, WATSON's phone, from within ten meters of WATSON's listed address on NW 22nd Ave, Miami, Florida, between the hours of 1:16 am and 10:20 am on February 12, 2021. A review of the call log from February 12, 2021 revealed an incoming call at 10:10 am from 305-XXX-3509, co-conspirator 1's phone number. Shortly after the 10:10 am call was received, there are no additional wireless network logins from within ten meters of the residence on NW 22nd Ave, Miami, Florida on WATSON's phone.

23. An additional review of the phone revealed that between 12:43 PM and 12:59 pm on February 12, 2021, WATSON received 3 telephone calls from telephone number 786-XXX-9331

listed under the name "YB". A law enforcement search revealed that telephone number 786-XXX-9331 belonged to an individual whose initials are "C.Y." At 1:47 pm on February 12, 2021, WATSON received a phone call from C.Y. Between 2:02 pm and 2:12 pm WATSON received three missed calls from C.Y. At 2:13 pm WATSON received a text message from C.Y. saying, "Bout to go another route." Based on my training and experience, and conferring with other law enforcement officers knowledgeable about Elder Fraud, your Affiant believes that C.Y. was saying he was going to go pick up another package from the Elder Fraud scheme. Additionally, the review of WATSON's phone call log revealed that at 2:17 pm, there is a missed call from C.Y., and at 2:19 pm, WATSON receives a text from C.Y. saying, "Don't worry about it bra".

24. On the morning of February 13, 2021, co-conspirator 1's wife told investigators that co-conspirator 1 left the house on February 12, 2021, after having worked in the morning, to go pick up WATSON.

25. Based upon the foregoing, your Affiant submits there is probable cause to believe that WATSON did willfully and knowingly combine, conspire, confederate, and agree with others to commit mail fraud, in violation of Title 18, United States Code, Section 1349.

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Alan G. Vega, Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone/Facetime on February ___19___, 2021.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

7